# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

AT&T MOBILITY SERVICES
LLC,

                Plaintiff,      :   Civil Action No. 2:17-cv-11962

      vs.

FRANCESCA JEAN-BAPTISTE,

             Defendant.

---

## DEFENDANT FRANCESCA JEAN-BAPTISTE'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT AND IN OPPOSITION TO MOTION TO COMPEL ARBITRATION AND FOR INJUNCTIVE RELIEF

---

**Ronald J. Wronko, Esq. (RW 1859)**
**Law Offices of Ronald J. Wronko, LLC**
134 Columbia Turnpike
Florham Park, New Jersey 07932
Telephone (973) 360-1001
Facsimile (973) 360-1881

Of Counsel and On the Brief:

    Ronald J. Wronko, Esq.
    Lisa Curry, Esq.

# **TABLE OF CONTENTS**

TABLE OF CONTENTS………………………………………………………………i

TABLE OF AUTHORITIES………………………………………………………..ii

PRELIMINARY STATEMENT……………………………………………………1

FACTUAL BACKGROUND………………………………………………………..3

LEGAL ARGUMENT

I.      THIS COURT HAS NO JURISDICTICTION OVER
        THIS MATTER WHICH IS NOT PROPERLY BEFORE
        THIS COURT………………………………………………………………..5

II.     THE YOUNGER AND COLORADO RIVER DOCTRINES DICTATE THAT
        THIS COURT SHOULD ABSTAIN FROM HEARING THIS MATTER……..10

III.    ATT&T's ARBITRATION AGREEMENT IS UNENFORCEABLE…………..16

IV.     THE FAA DOES NOT PROHIBIT NEW JERSEY FROM
        REQUIRING THAT ANY WAIVER OF A STATUTORY RIGHT BE CLEAR
        AND UNMISTAKEABLE……………………………………………………22

CONCLUSION……………………………………………………………………..25

TABLE OF AUTHORITIES

Cases

Addiction Specialists, Inc. v. Township of Hampton,
    411 F.3d 399 (3d. Cir. 2005) ……………………………………...……………10

Atalese v. U.S. Legal Svcs. Gro.,
    219 N.J. 430 (2014), cert. denied, 135 S.Ct. 2804,
    192 L.Ed. 2d 847 (2015) …………………………………………………...18-19, 23

Atchison, Topeka & Santa Fe R. Co. v. Buell,
    480 U.S. 557 (1985) ………………………………………………………….…..17

Colorado River Water Conservation Dist. V. United States,
    424 U.S. 800 (1976) ………………………………………………………10, 11

ConnTech Dev. Co. v. University of Conn. Educ. Properties, Inc.,
    102 F.3d 677 (2d Cir.1996) ……………………………………………………..…7

Cosimano v. Twp. Of Union,
    Civ. Action No. 10-5710 (FSH), D.N.J. (July 8, 2013). ……………….....…………11, 13

Craig v. Suburban Cablevision,
    274 N.J. Super. 303 (App. Div. 1994), aff'd, 140 N.J. 623 (1995) ………………….13

Cytec Industries v. Powell,
    630 F.Supp.2d 680 (2009) ………………………………………………………8

Dean Witter Reynolds, Inc. v. Byrd,
    470 U.S. 213 (1985) ………………………………………………………..…22

Doctor's Associates, Inc. v. Casarotto,
    517 U.S. 681 (1996) ……………………………………………………….....23

Duerlein v. new Jersey Auto. Full Inc.,
    261 N.J. Super. 634 (App. Div. 1993) …………………………………………....17

Dugan v. Best Buy Co. Inc.,
    Docket No. A-1897-16T4 (App. Div. Aug. 11, 2017) (unpub.) ……………………19-21

Failla v. City of Passaic, 146 F.3d 149, 157-58 (3d Cir. 1998) …………………………9

First Options of Chicago v. Kaplan,
    514 U.S. 938, 944 (1995) ……………………………………………...……..22

Fuchilla v. Layman,
    109 N.J. 319 (1988) ……………………………………………….…………13

Gallo v. Salesian Society, Inc.,
    290 N.J. Super. 616 (App. Div. 1996) ………………………………………14

Garfinkel v. Morristown Obstetrics,
    168 N.J. 124 (2001) …………………………….…………...…………14,18, 20

Gwynedd Properties, Inc. v. Lower Gwynedd Twp.,
    970 F.2d 1195 (1992) ………………………………………………………10

Hahn v. Arbat Systems Ltd.,
    200 N.J. Super. 266 (App Div. 1985) ……………………………………...15

Jaworski v. Ernst & Young U.S. L.L.P.,
    441 N.J.Super. 464 (App. Div. 2015), certif. denied, 223 N.J. 406 (2015) …………20-21

Jayasundera v. Macy's Logistics & Ops.,
    No. 14-CV-7455 (SDW)(SCM), 2015 WL 4623508 (D.N.J. Aug. 3, 2015) ………..20-21

John Hancock Mut. Life Ins. Co. v. Ollick,
    151 F.3d 132 (3d Cir. 1998) ……………………………………….……..5

Jones v. Haridor Realty Cort.,
    37 N.J. 384 (1962) ……………………………………………...…………13

Keelen v. Bell Communications,
    289 N.J. Super. 531 (App. Div. 1996) …………………………………...18

Leodori v. CIGNA,
    175 N.J. 293 (2003) …………………………………………...17-21, 23

Mack v. Berry,
    205 N.J. Super. 600 (Law Div. 1985) ……………………………………..14

Maher v. N.J. Transit Rail Operations,
    239 N.J.Super. 213 (App. Div. 1990) …………………………………...14-15

Marchak v. Claridge Commons, Inc.,
    134 N.J. 275 (1993) ………………………………………………………19

Mastrobuono v. Shearson Lehman Hutton, Inc.,
    514 U.S. 52 (1995) ……………………………………….………………23

McCue v. Silcox,
    122 N.J.L. 12 (1939) …….…..…………………………………………...……...18

Morgan v. Raymours Furniture Co.,
    443 N.J. Super. 338 (App. Div. 2016), certif. denied, 225 N.J. 220,
    cert. denied, 137 S.Ct. 204, 196 L.Ed.2d 132 (2016) ……………………….......17, 19, 21

Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,
    460 U.S. 1 (1983) …………………………………………...…....……..……… 6

Nascimento v. Anheuser-Busch Cos.,
    2016 U.S. Dist. LEXIS 112858 (D.N.J. Aug. 24, 2016) ……………….…..……….16

Ocean Grove Camp Meeting Assoc. v. Vespa-Papaleo,
    Civil No. 07-cv-03802 (Pisano, J.), Affirmed, 3d. Cir. Docket No. 07-4253 ………11-12

Ohio Civil Rights Commission v. Dayton Christian Schools,
    477 U.S. 619 (1986) ……………………………………………….....……. 12

Owens-Illinois, Inc. v. Meade,
    186 F.3d 435 (4th Cir. 1999) …………………………….……..…………...…..6,8

Perry v. Thomas,
485 U.S. 483 (1987) ………………………………………………..……….22

Prima Paint Corp. v. Flood & Conklin Mfg. Co.,
    388 U.S. 395 (1967) …………………………………………………….…..22

Provident Tradesmens Bank & Trust Co. v. Patterson,
    390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) …..………………………..…..6

Red Bank Reg. Educ. Ass'n v. Red Bank Reg. High School Bd. of Educ.,
    78 N.J. 122 (1978) ………………………………………………………....18

Roseville Bldg. & Loan Ass'n v. Jones,
    130 N.J.L. 53, 56 (1943) ………………………………………….…………..18

Ruffolo v. HSBC Bank USA NA,
    NO. CIV. A 14-638 MAS, 2014 WL 4979699 (DNJ Oct 3, 2014). …………………10,11

Shaner v. Horizon Bancorp,
    116 N.J. 433 (1989) ……………………………………………………... 13

Shields v. Barrow,

58 U.S. (17 How.) 130, 15 L.Ed. 158 (1854) ……………………………….......…6

Southland Corp. v. Keating,
 465 U.S. 1 (1984) …………………………………………………………… 6, 23

Teaneck Bd. Of Educ. v. Teaneck Teachers Ass'n,
 94 N.J. 9 (1983) ..………………………………………………………………..14

Younger v. Harris,
 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) …………………....…………10-12


Statutes
Federal Arbitration Act, 9 U.S.C. sec 1 et seq ……………………………….…....22

Law Against Discrimination, N.J.S.A. 10:5-3 et seq. ……………………….……………...…13

Federal Rules

Fed.R.Civ.P. 19 ……………………………………………………………….....6,7

State Constitution

N.J. Const. Art. 1, para 9 …………………………………………………….....14

Other Materials

H.R. Rep. No, 96, 68th Cong. 1st Sess., 1, 2 (1924) ……………………………….22

L.1990, c.12, Assembly Judiciary, Law and Public Safety Committee Statement
(reprinted as an annotation to N.J.S.A. 10:5-3) …………………………………....13

4 Moore's Federal Practice §  19.02[3][b] (3d ed.1999) ………..…………………….....7

## PRELIMINARY STATEMENT

Defendant Francesa Jean-Baptiste hereby submits this memorandum of law in support of her Motion to Dismiss Complaint and in opposition to Plaintiff AT&T Mobility Services' Motion and Petition to compel arbitration and for injunctive relief.

AT&T seeks to deprive an Assistant Store Manager of her right to a jury trial on her discrimination files asserted in a pending State Court action through a flawed attempt to assert Federal Jurisdiction and decision-making and through an unenforceable Arbitration Agreement.

First, AT&T could have simply addressed this arbitration in the pending State Court action, in which Ms. Jean-Baptiste's manager is also named as a defendant. Instead, AT&T seeks to circumvent a New Jersey State Court determination by leaving as unnamed defendant Robert Woodier because he is a New Jersey resident who would destroy diversity jurisdiction. By failing to name a necessary and indispensable party, AT&T inadvertently will create a multiplicity of litigation as well as prejudice to the parties involved.

Second, AT&T's obvious attempt to circumvent a New Jersey State Court determination on important public policies of arbitration of a New Jersey Law Against Discrimination case raises the very clear fact that this Court should abstain from making a ruling under the Younger and Colorado River doctrines. AT&T seeks to deprive New Jersey from making a determination on issues directly impacting rights afforded by the New Jersey Constitution and New Jersey Legislature.

Finally, AT&T's arbitration policy is unenforceable. It seeks to have employees waive their Statutory rights to a jury trial without ever telling them that they have such rights because telling employees might actually make them vigilant against proceeding to arbitration. Instead,

AT&T beats around the proverbial bush without explicitly advising employees of their <u>rights</u>. The policy also seeks to be bind employees without ever having them expressly affirm that they wish to be bound.  Such a policy has been found invalid by New Jersey case law.

## FACTUAL BACKGROUND

On August 18, 2017, Francesca Jean-Baptiste filed a Complaint against her employer AT&T Mobility and her manager Robert Woodier as well as John Does 1-10 and ABC Corps. 1-10 in the Superior Court of New Jersey, Law Division, Essex County, New Jersey, under case Docket No. ESX-L-6029-17. Her Complaint alleged violations of the New Jersey Law Against Discrimination against the employer and against the manager as an aider and abetter. This action remains pending. Instead of addressing the issue of enforceability of an arbitration clause in the pending State Court action, where all parties have been named, plaintiff attempts to circumvent a State Court ruling by filing this Federal action. Upon information and belief, defendant Woodier is a New Jersey resident. Ex. A, Declaration of Ronald J. Wronko ("Wronko Decl."). In his Answer, he asserts arbitration preclusion as his first Affirmative Defense. See id. at Ex. B.

On March 18, 2016, AT&T sent Jean-Baptiste an email concerning an Arbitration Agreement that AT&T wished to implement. AT&T e-mailed Ms. Jean-Baptiste an "Important Notice Regarding Management Arbitration Agreement"; she was also sent several further emails telling her that if she did not opt out of the Agreement she would be deemed to have accepted it. AT&T requires employees to take action to get out of arbitration rather than to affirmatively agree to it. Ms. Jean-Baptiste was not afforded sufficient time as an Assistant Store Manager to focus on this policy. See ¶ 4, Declaration of Francesca Jean-Baptiste ("Jean-Baptiste Decl."). Ms. Jean-Baptiste did not appreciate or understand at that time that taking no action would result in an agreement by default to arbitration. See id.

In contrast, AT&T utilized a different procedure for other policies where Ms. Jean-Baptiste was required to affirmatively agree to such policies. See ¶ 5, Jean-Baptiste Decl. Ms. Jean-Baptiste has declared that "if the training had requested me to check-mark whether I was accepting or consenting to arbitration, I would not have check-marked it. AT&T Mobility Service's

3

approach of using an opt-out for rejection was inconsistent with its approach on other policies and misled me." See id. Later, in July 2017, a co-worker advised her about a link for opting out of the Arbitration Agreement. See id. at ¶ 6. The co-worker forwarded her the link. See id. She then attempted to opt out of the policy, which opt out AT&T now rejects.

The terms of the Arbitration Agreement are included in Exhibits 2 and 3 to the Matyola Declaration. Nowhere in the Agreement is there any explanation that employees have a "right" to a jury trial. Likewise, the Agreement does not state that such "right" would be waived. Instead, the Agreement avoids language describing the import of the decision employees would be making relating to whether to opt-out from arbitration.

## LEGAL ARGUMENT

### I.    THIS COURT HAS NO JURISDICTION OVER THIS MATTER WHICH IS NOT PROPERLY BEFORE THIS COURT

#### A. Limited review of this matter shows that it is not arbitrable.

The Court is obliged to undertake a "limited review" when presented with a case concerning enforcing arbitration agreements, to ensure that the dispute is even arbitrable. John Hancock Mut. Life Ins. Co. v. Ollick, 151 F.3d 132, 137 (3d Cir. 1998).

Certainly, whether the case is arbitrable is at the core of the dispute here. Despite the remonstrations of Plaintiff, the Defendant denies entering into any agreement to arbitrate. As addressed in the below points, this is a fundamental issue in this case and it is a vital issue for New Jersey public policy: whether a party who never affirmatively consented to an arbitration agreement can be said to have waived her rights to a jury trial (particularly in a discrimination case, as is the case here) under such an agreement. Therefore, the mandatory limited review shows that there is a grave dispute over whether this issue is arbitrable, an issue which goes to the heart of New Jersey jurisprudence concerning employment discrimination matters, and thus, the Court should decline jurisdiction of this matter.

#### B. The Federal Arbitration Act does not confer jurisdiction on this Court to hear this matter.

Plaintiff incorrectly asserts that the Federal Arbitration Act, 9 U.S.C. sec 1 et seq. (FAA) requires this Court to compel the parties to arbitrate the Defendant's state court claims. Even if Defendant were correct that Plaintiff is bound by the Agreement, that alone would not give this Court jurisdiction. The FAA itself does not confer jurisdiction on this Court to hear a matter involving an arbitration agreement that is subject to the FAA. Rather, a dispute over an arbitration requires a valid basis for jurisdiction such as either a federal question, or diversity

between the parties, for this court to have jurisdiction. See, e.g., <u>Southland Corp. v. Keating</u>, 465

U.S. 1, 16 n.9 (1984) ("While the Federal Arbitration Act creates federal substantive law

requiring the parties to honor arbitration agreements, it does not create any independent federal-

question jurisdiction under 28 U. S. C. § 1331 or otherwise") and <u>Moses H. Cone Mem'l Hosp.</u>

<u>v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25 n. 32 (1983) (FAA requires "diversity of citizenship or

some other independent basis for federal jurisdiction").

### C.  **This Court does not have jurisdiction on the basis of diversity of the parties.**

The Plaintiff here claims that jurisdiction lies on the basis of diversity jurisdiction,

ignoring the fact that it has failed to name a necessary and indispensable party which makes

diversity jurisdiction impossible.

Fed.R.Civ.P. 19 provides that a federal court has jurisdiction over persons who are

subject to service of process and whose joinder will not destroy jurisdiction. Nevertheless, where

a nonparty is both necessary and indispensable, the court must join the party, even if such joinder

would destroy jurisdiction. When that occurs, the suit must be dismissed.  <u>Owens-Illinois, Inc. v.</u>

<u>Meade</u>, 186 F.3d 435 (4th Cir. 1999) (affirming dismissal of a case where plaintiff failed to join a

necessary and indispensable, non-diverse party).

Fed.R.Civ.P. 19 sets forth a two-step test for determining whether the court must dismiss

an action for failure to join an indispensable party.  First, the court must determine whether an

absent party qualifies as a "necessary" party under Rule 19(a).  <u>Provident Tradesmens Bank &</u>

<u>Trust Co. v. Patterson</u>, 390 U.S. 102, 124, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) (" 'Persons

having an interest in the controversy, and who ought to be made parties .. are commonly termed

necessary parties . ' ") (quoting <u>Shields v. Barrow</u>, 58 U.S. (17 How.) 130, 139, 15 L.Ed. 158

(1854)).

Rule 19(a) provides that the absent party should be joined, if feasible, where:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed.R.Civ.P. 19(a).

If the court finds that the party is necessary under Rule 19(a), then, the court next must consider whether joinder is feasible; 4 Moore's Federal Practice § 19.02[3][b] (3d ed.1999). Finally, if joinder of an absent party is not feasible, the court shall determine whether the party is "indispensable." If the absent party is indispensable, then the court must dismiss the action pursuant to Rule 19(b). ConnTech Dev. Co. v. University of Conn. Educ. Properties, Inc., 102 F.3d 677, 681-82 (2d Cir.1996) (citing Patterson, 390 U.S. at 108-25, 88 S.Ct. 733).

Rule 19(b) provides, by way of explanation of what it means for a party to be 'indispensable':

> [T]he court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed.R.Civ.P. 19(b).

Applying this analytical framework, the determination must be that the manager named as a co-defendant in the state proceeding, Robert Woodier, is indeed a necessary and indispensable party; and thus, diversity jurisdiction does not lie.

In the state court action, Ms. Jean-Baptiste alleged that Woodier aided and abetted the employer, AT&T, in its discrimination against her. Her complaint included a separate count against Woodier for aiding and abetting, a separate violation of the LAD.

Where the underlying case turns on the manager's actions, as Ms. Jean-Baptiste's manager, that manager is a necessary and indispensable party. Cytec Industries v. Powell, 630 F.Supp.2d 680 (2009) (dismissing federal complaint for failure to join a necessary and indispensable party). In Cytec, as here, the company had been sued in state court by a former employee who had also named a manager of the company. The company, hoping to divert the matter into arbitration, filed a federal suit but failed to name the manager who was co-defendant in the state action. The federal court found that the manager was necessary because (1) the manager had asserted the affirmative defense of arbitration in the state court case, and (2) the manager could yet attempt to compel arbitration of the employee's claims in state court, which would then place the employee at a substantial risk of incurring inconsistent obligations. See Fed.R.Civ.P. 19(a)(1)(B). For identical reasons, here, Woodier has to be considered a necessary party.  His answer filed in State Court lists arbitration as the first Affirmative Defense.  See Ex. A, Declaration of Ronald J. Wronko ("Wronko Decl.").  If he is not joined, then Ms. Jean-Baptiste is at a substantial risk of including inconsistent obligations.

Similarly, the manager Woodier is also an indispensable party who must be joined in this action. The four factors listed above dictate this result, primarily because legal "whipsawing" is likely to occur if the federal court retains jurisdiction of the employer's suit, while the employee's suit against the manager is allowed to continue in state court. See Cytec, supra, citing Owens-Illinois, Inc. v. Meade,  186 F.3d. 435, 441 (4th Cir. 1999).

Through its efforts to ensure diversity of citizenship between the parties is not destroyed, AT&T seeks to create two actions wherein the identical issues will be litigated.  To establish aiding and abetting liability, the first inquiry is whether the employer is liable and then the issue becomes whether under N.J.S.A. 10:5-12(e), any employee is liable for aiding and abetting. Failla v. City of Passaic, 146 F.3d 149, 157-58 (3d Cir. 1998).  AT&T's procedural maneuverings create the real likelihood of a race to an outcome and either inconsistent outcomes or to claims of preclusion based on the outcome of one proceeding or the other.  This could potentially prejudice the absent party to a final outcome and will prejudice plaintiff regardless with having to litigate the same dispute twice to reach final resolution.

Because Woodier's joinder destroys diversity, this Court should dismiss the Complaint and abstain from hearing this case.

## II.  THE <u>YOUNGER</u> AND <u>COLORADO RIVER</u> DOCTRINES DICTATE THAT THIS COURT SHOULD ABSTAIN FROM HEARING THIS MATTER

The doctrine on federal courts' abstention from exercising jurisdiction was set forth in <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800, 813 (1976) and <u>Younger v. Harris</u>, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) and their progeny. This is a discretionary doctrine that allows federal district courts to abstain from hearing cases when "resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding." <u>Addiction Specialists, Inc. v. Township of Hampton</u>, 411 F.3d 399, 408 (3d. Cir. 2005).  The <u>Younger</u> abstention derives primarily from "'the notion of comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." <u>Gwynedd Properties, Inc. v. Lower Gwynedd Twp.</u>, 970 F.2d 1195 (1992) (quoting <u>Younger</u>, 401 U.S. at 44).

Under the <u>Colorado River</u> doctrine federal courts should abstain from exercising jurisdiction in several circumstances, when there is a parallel action in state court, meaning the state case involves the same parties and substantially identical claims.  Ex. C, Wronko Decl., <u>Ruffolo v. HSBC Bank USA NA</u>, NO. CIV. A 14-638 MAS, 2014 WL 4979699 (DNJ Oct 3, 2014). The Colorado River case and its progeny generally seek to expand upon the <u>Younger</u> notion of comity, identifying the following factors:

(1)  Which court first assumed jurisdiction over the property;
(2)  The inconvenience of the federal forum;
(3)  The desirability of avoiding piecemeal litigation;
(4)  The order in which jurisdiction was obtained;
(5)  Whether federal or state law controls; and
(6)  Whether the court will adequately protect the interests of the parties.

In Ruffolo, this Court found that all six factors indicated that abstention was the proper course of action, noting that the claims were primarily based on state law.

This Court also abstained under the Younger / Colorado River doctrine in Cosimano v. Twp. Of Union, Civ. Action No. 10-5710 (FSH), D.N.J. (July 8, 2013).  Ex. D, Wronko Decl.  In Cosimano, Judge Hochberg emphasized that one of the circumstances where a federal court should abstain from hearing a case was 'where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar.'  Cosimano, citing Colorado Water Conservation Dist., 424 U.S. at 814-16, and Younger v. Harris, 401 U.S. 37 (1971).

In Cosimano, Judge Hochberg determined that this circumstance indeed did apply. Cosimano involved the right of public employees to qualify for publicly funded pension plans. This, the Court held, was a difficult question of state policy bearing on an issue of substantial public import, requiring that the federal court abstain and allow the state court to decide the matter.

In Ocean Grove Camp Meeting Assoc. v. Vespa-Papaleo, Civil No. 07-cv-03802 (Pisano, J.), Affirmed, 3d. Cir. Docket No. 07-4253 (Nov. 7, 2007), this Court addressed a situation involving the same state anti-discrimination statute, the Law Against Discrimination, as implicated in the case at bar. Ex. E, Wronko Decl.  Although nonprecedential the case is instructive and useful in illustrating how a District of New Jersey court handled the issue of how established abstention doctrines affect this type of fact pattern. In Ocean Grove, the plaintiff, a religious campground, wanted to prevent same-sex couples from utilizing a portion of the campground's property for their civil union ceremony. Notwithstanding that the couples filed suit in state court initially, the campground filed a second action in federal court with a federal

question basis (first amendment rights), naming the Division on Civil Rights' Director as a defendant, in an attempt to curtail the Division from allowing such cases to succeed.

The District Court found that the Younger doctrine required the federal court to abstain from exercising jurisdiction, noting the Younger factors, (1) a pending state proceeding of a judicial nature which (2) implicates important state interests and (3) offers the plaintiff opportunity to raise its constitutional challenges (if any). Ocean Grove at 2.

The same circumstance is present in this matter. The defendants are asking this Court to make a determination on whether Defendant has consented to the Plaintiff's arbitration policy, thus waiving a number of important state rights under the statute, including her right to a jury trial. This Court held in Ocean Grove that "the state of New Jersey has an important interest in preventing discrimination in places of public accommodation" and noted with approval that "there was "no doubt" that the elimination of prohibited discrimination was sufficiently important to satisfy the requirements for *Younger* abstention." Ocean Grove, citing Ohio Civil Rights Commission v. Dayton Christian Schools, 477 U.S. 619 (1986) (federal court abstained from taking jurisdiction of a matter involving claim of religious discrimination against a teacher).

As Ocean Grove and the Ohio case held, so too here, there is no doubt that this is a matter where the federal court should abstain from taking jurisdiction. The right to a jury trial which is provided for in the New Jersey Constitution is unquestionably "an issue of substantial public import." Whether an employee has waived that right by agreeing to an employer's arbitration policy – particularly where there is a serious dispute about whether there was any "agreement" on the employee's part to adhere to that policy – falls under the category of "a difficult question of state policy bearing on an issue of substantial public import" and this court

should therefore abstain from hearing this case.  Ex. D, Wronko Decl., <u>Cosimano v. Twp. Of Union</u>, Civil Action No. 10-5710(FSH) (D.N.J. July 8, 2013).

New Jersey courts have emphasized repeatedly that this state has a strong policy against discrimination, embodied in our anti-discrimination statute the Law Against Discrimination, N.J.S.A. 10:5-3 et seq. ("LAD"). <u>Jones v. Haridor Realty Cort.</u>, 37 N.J. 384, 392 (1962).  There are "frequent references in judicial opinions to the remedial objectives of the LAD and the breadth with which its policies are to be applied in light of its overall design." <u>Craig v. Suburban Cablevision</u>, 274 N.J. Super. 303, 309 (App. Div. 1994), aff'd, 140 N.J. 623 (1995). As the LAD itself provides, it shall be liberally construed in combination with other protections available under the laws of this state. N.J.S.A. 10:5-3. The "overarching goal of the LAD is nothing less than the eradication of the cancer of discrimination," <u>Fuchilla v. Layman</u>, 109 N.J. 319, 334 (1988) (quotations omitted). New Jersey views this issue of such grave importance because unlawful discrimination not only causes grievous injury to the victim, it also "menaces the institutions and foundation of a free democratic state." N.J.S.A. 10:5-3.

The LAD includes broad remedies and enforcement mechanisms, including economic damages, pain and suffering, punitive damages and attorney's fees. N.J.S.A. 10:5-3, 10:5-27.1 Equally important the LAD allows victims to file either with the New Jersey Division on Civil Rights or in Superior Court. In the latter case, one of the most critical tools is the right to trial by jury of discrimination claims. Indeed, the Legislature explicitly added the right to trial by jury to the statute, overruling the Supreme Court's decision in <u>Shaner v. Horizon Bancorp</u>, 116 N.J. 433 (1989). See L.1990, c.12, Assembly Judiciary, Law and Public Safety Committee Statement (reprinted as an annotation to N.J.S.A. 10:5-3). Specifically in the context of whether an arbitration clause should be applied to an employee's LAD claim, the Supreme Court has

13

emphasized that the "choice of forum established by the LAD is an integral feature of the statute." Garfinkel v. Morristown Obstetrics, 168 N.J. 124, 131 (2001).

The New Jersey Constitution provides that [t]he right of trial by jury shall remain inviolate." N.J. Const. Art. 1, para 9. New Jersey Courts have been vigilant in preserving the jury trial right against involuntary arbitration, pointing to that right being specifically preserved by the state constitution. As one court explained:

> The Legislature and the courts recognize that the parties are entitled to a "day in court", and therefore the court-established arbitration system provides a quasi-judicial setting for the determination of claims within the statutory guidelines. We must not lose sight of the fact that however formal the arbitration proceedings become, they are not, nor were they ever contemplated to be an actual substitute for judicial disposition by trial. The parties cannot be denied the constitutionally-guaranteed right to a jury trial once they have participated in the arbitration process."

Mack v. Berry, 205 N.J. Super. 600, 603 (Law Div. 1985).

New Jersey Courts have held that a right to a jury trial in a discrimination case cannot be waived involuntarily by mandatory arbitration, noting the public interest in enforcement of the LAD and underscoring the importance of the rights involved. See Gallo v. Salesian Society, Inc., 290 N.J. Super. 616, 654 (App. Div. 1996), see also Teaneck Bd. Of Educ. v. Teaneck Teachers Ass'n, 94 N.J. 9, 17, 20-21 (1983) (even where arbitration is precluded for a public employee, the employee may still bring a discrimination claim under the LAD). As the Appellate Division explained in another case, "notwithstanding the strong policies encouraging arbitration, different considerations apply where the employee's claim is based on right arising out of a statute designed to provide minimum substantive guarantees to individual workers…. New Jersey clearly has an interest in regulating employment discrimination… In a somewhat different context, we have held that the right not to be discriminated against conferred by statue or regulation is not subject to arbitration." Maher v. N.J. Transit Rail Operations, 239 N.J.Super.

213, 221, 222 (App. Div. 1990) (citations omitted). See <u>Hahn v. Arbat Systems Ltd.</u>, 200 N.J. Super. 266, 268-69 (App Div. 1985) (prior administrative proceeding will not preclude a discrimination claim because to hold otherwise would "be permitting a serious infringement upon this important public policy.").

## III.   AT&T's ARBITRATION AGREEMENT IS UNENFORCEABLE

If the Court finds that there is jurisdiction and does not abstain, then the Court should deny all relief sought by AT&T and dismiss the action.  First, AT&T's policy does not contain a clear and unambiguous waiver of a State statutory right to a jury trial.  Second, AT&T's policy does not require an affirmative consent required by NJ for arbitration to be binding.

The AT&T arbitration policy at issue in this case does not at any point advise the employee that there is a statutory or Constitutional "right" to a jury trial.  It does not say that a "right" will be "waived."   As noted previously, New Jersey State Courts require a waiver to be clear and unmistakable.   The Plaintiff cites Nascimento v. Anheuser-Busch Cos., 2016 U.S. Dist. LEXIS 112858 (D.N.J. Aug. 24, 2016) where the court enforced an arbitration agreement, however, this case is not on point as the facts are very different. In Nascimento, the employer's agreement explicitly stated that the employee waived the right to a jury trial. On the first page of the Dispute Resolution Policy, a section entitled "SPECIAL NOTICE TO EMPLOYEE" provided, in relevant part, that the "you are agreeing … to waive all right to a trial before a jury on such claims." No such verbiage appears in the instant matter.  AT&T in fact, studiously avoided using such a clear phrase in its policy.  Instead, AT&T's policy takes a very casual approach of trying to make the selection of arbitration as something not to be concerned about. AT&T's in-house counsel's motivation is likely to try to avoid raising concerns in the eyes of its employees that they are actually waiving a Statutory or a Constitutional "right" to a jury trial.  It stands to reason that if an employee does not know she/he has a right to a jury trial, then such employee has not made a knowing decision to waive that right.  Thus, the Nascimento case really points to the conclusion that without a clear and unmistakable waiver present in this case, this Court should abstain from hearing this matter.

Next, AT&T's policy does not provide for affirmative consent to be bound.  In New Jersey, one cannot be bound to the terms of an employment arbitration policy unless one affirmatively consents. Consent by silence is impermissible, at least in New Jersey. Leodori v. CIGNA, 175 N.J. 293 (2003), Morgan v. Raymours Furniture, 443 N.J. Super. 338 (App. Div. 2016).

As explained above, the LAD includes the right to a jury trial, and indeed, the New Jersey Constitution provides that that right "shall remain inviolate." Similarly, in those cases where a contract purports to waive the right to a jury trial, that waiver must be voluntary. See cases cited above. These principles form the basis for the conclusion, well settled in New Jersey, that an agreement to arbitrate certain claims must be clear and explicit and the parties "have a right to stand upon the precise terms of their contact, the courts may not rewrite the contract to broaden the scope of arbitration or otherwise make it more effective." Duerlein v. new Jersey Auto. Full Inc., 261 N.J. Super. 634, 639-40 (App. Div. 1993) (citations omitted).

This is particularly true when the party seeking enforcement of an arbitration clause asserts its application to constitute a waiver of statutory rights. As the United States Supreme Court itself has recognized, one issue that impacts how an arbitration agreement is interpreted is whether it should be read to apply to statutory rights. As the Supreme Court has explained, notwithstanding the strong public policies favoring arbitration, "different considerations apply where the employee's claim is based on right arising out of a statute designed to provide minimum substantive guarantees to individual workers." Atchison, Topeka & Santa Fe R. Co. v. Buell, 480 U.S. 557, 565 (1985) (holding that the Railway Labor Act did not preempt individual employee's claim for injuries under the Federal Employers Liability Act.). The Court held that

any requirement to arbitrate discrimination claims must be "clear and unmistakable." Id. at 79-80.

This is the same standard that New Jersey Courts have always applied to the contractual waiver of a statutory right. It has been long established that any waiver of a statutory right under New Jersey law must be knowing and voluntary. Roseville Bldg. & Loan Ass'n v. Jones, 130 N.J.L. 53, 56 (1943); McCue v. Silcox, 122 N.J.L. 12, 13 (1939). And in determining whether the waiver is "knowing", New Jersey courts assert that the contractual language itself must be "clear and unmistakable" and "contractual language alleged to constitute a waiver will not be read expansively." Red Bank Reg. Educ. Ass'n v. Red Bank Reg. High School Bd. of Educ., 78 N.J. 122, 140 (1978)

Because a right to a jury trial is an integral feature of the LAD, the New Jersey Supreme Court has held that an arbitration clause cannot be applied to LAD claims unless that intention has been "clearly and unmistakably established." Garfinkel, supra, 168 N.J. at 136.

New Jersey courts have specifically applied this requirement to statutory employment claims, both for arbitration agreements and for other contractual waivers of such claims. See Alamo Rent A Car, Inc. v. Galarza, 306 N.J. Super. 384, 388, 394-5 (App. Div. 1997) (to be applied to LAD claims, arbitration agreement must constitute a knowing and voluntary waiver of the right to sue); Keelen v. Bell Communications, 289 N.J. Super. 531, 541 (App. Div. 1996) (to bar CEPA claim, release must be "knowing and voluntary,") Atalese v. U.S. Legal Svcs. Gro., 219 N.J. 430, 442 (2014), cert. denied, 135 S.Ct. 2804, 192 L.Ed. 2d 847 (2015) ("An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law…. "), Leodori v. CIGNA Corp., 175 N.J. 293, 302, cert. denied, 540 U.S. 938, 124 S.Ct. 74, 157 L.Ed.2d 250 (2003) (Where the employee waives that

right, the waiver "must reflect that an employee has agreed clearly and unambiguously to arbitrate the disputed claim." A valid waiver "results only from an explicit, affirmative agreement that unmistakably reflects the employee's assent." Leodori at 303; Atalese 219 N.J. at 442-3.

Opt-out provisions such as the one Plaintiff AT&T is attempting to defend, simply do not meet the requirements of New Jersey law governing waivers. For the employer to show that an employee's waiver was valid, the employer must first provide sufficient notice to the employee that the employer's arbitration agreement will entail the employee waiving their time-honored right to sue in court. Dugan v. Best Buy Co. Inc., Docket No. A-1897-16T4 (App. Div. Aug. 11, 2017) (unpub.) citing Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993). The terms of the agreement however, are unenforceable unless 'the employee's] assent to its terms is established by either his signature on the agreement or "some other explicit indication that [he] intended to abide by that provision." Leodori, 175 N.J. at 305, Dugan, Supra, at *8. Obtaining the employee's signature on some rider or document indicating that the employee 'received' and 'understood' the contents of the agreement *does not mean* that the employee 'agreed' to a waiver of the right to sue that might be in that agreement. Morgan v. Raymours Furniture Co., 443 N.J. Super. 338, 343 (App. Div.) (citations omitted), certif. denied, 225 N.J. 220, cert. denied, 137 S.Ct. 204, 196 L.Ed.2d 132 (2016); Dugan, supra (holding that "Plaintiff's mouse-click on the acknowledgement box did not manifest his assent to the policy, only that the read and understood the policy").

The Leodori court "advised employers of an easy method to avoid the problem which defendant now faces due to its "opt out" policy:

> With minimal effort, employers can revise the language to include an indication
> that the recipient has received and agreed to an arbitration policy. The

acknowledgement form need not recite that policy verbatim so long as the form refers specifically to arbitration in a manner indicating an employee's assent, and the policy is described more fully in an accompanying handbook or in another document known to the employee.

Leodori, 175 N.J. 307; see also Dugan at *9; Garfinkel at 136 (knowing of the policy does not establish assent to the policy).

Here, the plaintiff employer AT&T presented the arbitration policy to employees such that employees were expected to "opt out" of the policy by clicking a box. Defendant reviewed the policy, but did not even go so far as to click the "opt out" box and therefore did nothing to affirmatively accept the arbitration provisions. Under well-settled New Jersey case law, defendant's actions do not constitute acceptance, and defendant is therefore not bound by the terms of the arbitration policy. Plaintiff disingenuously cites a non-precedential case, Jayasundera v. Macy's Logistics & Ops., No. 14-CV-7455 (SDW)(SCM), 2015 WL 4623508 (D.N.J. Aug. 3, 2015) for support of the opposite view. See db p. 14. Plaintiff also cites Jaworski v. Ernst & Young U.S. L.L.P., 441 N.J.Super. 464 (App. Div. 2015), certify. denied, 223 N.J. 406 (2015); however, that case is not on all fours with this one. In Jaworski an employee's continued employment – for five years - after being shown the arbitration agreement was held to be his assent to the agreement.  In Dugan, supra, the employee was faced with a similar arbitration agreement, and he was employed only three weeks after being shown the agreement (and not affirmatively assenting to it). The Dugan court found three weeks of employment was not long enough to manifest "assent" and held that the employee in that matter had not consented to, and could not be bound to, the arbitration agreement. Unlike the Jaworski case, here, nothing in employer AT&T's policy claims that merely by viewing the policy an employee becomes bound by it. AT&T argues that the employee must "opt out" in order not to be bound by the policy – not the same as the employer in Jaworski.

Here, AT&T used a different procedure with its arbitration policy than it uses with its other policies.  AT&T requires employees to affirmatively agree to other policies.  AT&T's divergence from requiring affirmative agreement to arbitration is not only counter to New Jersey State law but it was also misleading in light of its internal practices.  The opt-out procedure for a very busy employee like an Assistant Store Manager like Ms. Jean-Baptiste, does not clearly and unmistakably ensure that she understood that inaction is the equivalent of consent.

Ms. Jean-Baptiste was employed for 15 months after the close of the "opt out period" set by the employer until the time she filed her lawsuit against the employer – hardly comparable to five years. There is simply no basis for claiming that <u>Joyasundera's</u> weak guidance, and the off-point <u>Jaworski</u> case, particularly in light of <u>Dugan's</u> opposite result, should have any sway on this Court's decision here.  Instead, during that 15 month period, Ms. Jean-Baptiste did ultimately submit an opt-out from the policy, which AT&T declares as invalid.  Nevertheless, it demonstrates her intent not to be bound by same.

In sum, AT&T's opt-out policy, which failed to include any kind of affirmative assent by the employee, and even failed to include any forthright statement that the employee was waiving a statutory right to a jury trial, simply cannot be held, in light of <u>Leodori</u> and <u>Morgan v. Raymours</u>, to constitute a clear and unmistakable waiver of plaintiff's statutory rights under the LAD.

## IV.    THE FAA DOES NOT PROHIBIT NEW JERSEY FROM REQUIRING THAT ANY WAIVER OF A STATUTORY RIGHT BE CLEAR AND UNMISTAKEABLE

The FAA was not designed to federalize state contract law. Rather, the FAA's purpose was to "overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 219-20 (1985). Or, as Congress explained at the time, the purpose of the Act was to place arbitration agreements on the same footing as other contracts. H.R. Rep. No, 96, 68th Cong. 1st Sess., 1, 2 (1924). Thus the FAA is intended to make arbitration agreements as enforceable as other contracts, not more so. Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967).

Thus, it is clear that under the FAA, in determining both the enforceability and the scope of an arbitration clause, state courts can and should apply ordinary contract principles under state law, as long as they do not give arbitration agreements disfavored treatment. First Options of Chicago v. Kaplan, 514 U.S. 938, 944 (1995). In fact, this is expressly provided by the FAA itself, which states that arbitration agreements shall be enforceable "save upon such grounds as exist at law or in equity for the revocation of any contact."  9 U.S.C. 2, interpreting this "savings" language in the FAA, the Supreme Court has explained:

> Therefore state law, whether or legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of section 2….. A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different form that in which it otherwise construes nonarbitration agreements under state law.

Perry v. Thomas, 485 U.S. 483, 493 n.9 (1987).

Thus, this Court can – and should – apply ordinary New Jersey principles of contract construction to arbitration agreements, as long as it does not treat them differently than it would any purported contract.

Indeed, in those instances where the Supreme Court has invalidated state laws that limited the enforceability of arbitration agreements, the Court took pains to note that the law in question singled out arbitration agreements for less favorable treatment than ordinary contracts would receive under state law. See, e.g., Doctor's Associates, inc. v. Casarotto, 517 U.S. 681, 687-88 n. 3 (1996); Southland Corp. v. Keating, 465 U.S. 1, 16-17 n.11 (1984).

Even in the absence of an express agreement to abide by state law, the Supreme Court has applied ordinary state law contract principles to interpret agreements to arbitrate. For example, in Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62-63 (1995), the Court applied state common law rules of contract interpretation (namely, that unmibiguous language is construed against the drafter) to refuse to read arbitration language to preclude a claim for punitive damages.

Thus, while a state under the FAA cannot subject arbitration agreements to more burdensome requirements than other contracts, it can regulate them "by applying its contract law principles that are relevant in a given case." Leodori v. CIGNA Corp., 173 N.J. 293, 302 (2003). See Also N.J.S.A. 2A:23B-6(a) (an agreement to arbitration is enforceable "except upon a ground that exists at law or in equity for the revocation of a contract."). See also Atalese 219 N.J. at 444 ("Arbitration clauses are not singled out for more burdensome treatments than other waiver of rights clauses under state law").

In this matter, then, AT&T's "opt out" policy does not satisfy the New Jersey requirement for a clear and unmistakable waiver of an important state right, the right to a jury

trial. This state right cannot be diminished just because AT&T attempted to use an arbitration agreement to undermine it. No amount of rhetoric about the FAA can overcome this point.

## **CONCLUSION**

For the reasons stated above, this Court should grant defendant's Motion to Dismiss and

deny plaintiff's motion.

DATED: December 18, 2017

RONALD J. WRONKO, LLC
*Attorneys for Plaintiff*

By:   ___/s/ *Ronald J. Wronko*_____
       Ronald J. Wronko, Esq.
       For the firm