# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **AT&T MOBILITY SERVICES LLC,** *Plaintiff,* v. **FRANCESCA JEAN-BAPTISTE,** *Defendant.* | **Civil Action No. 17-11962** **OPINION** |

**THIS MATTER** comes before the Court on Plaintiff AT&T Mobility Services LLC's ("Plaintiff" or "AT&T") Motion to Compel Arbitration, ECF No. 3, and Defendant Francesca Jean-Baptiste's ("Defendant" or "Jean-Baptiste") Cross-Motion to Dismiss Plaintiff's Complaint, ECF No. 11. For the reasons set forth below, AT&T's Motion to Compel Arbitration is **DENIED** and Jean-Baptiste's Cross-Motion to Dismiss is **GRANTED**.

## I. BACKGROUND

### A. Factual Background

AT&T asks the Court to compel arbitration pursuant to 9 U.S.C. § 4 and to stay a pending action in the Superior Court of New Jersey Law Division, Essex County (the "State Court Action"), which AT&T alleges was initiated by Jean-Baptiste in violation of a pre-dispute arbitration agreement (the "Arbitration Agreement"). The enforceability of that Arbitration Agreement against Jean-Baptiste is at the core of the present dispute.

Jean-Baptiste is employed by AT&T as an Assistant Store Manager in Union, New Jersey. Compl. ¶ 7. On March 18, 2016, she received an email with the subject heading "Action Required: Notice Regarding Arbitration Agreement." Id. ¶ 9. The email advised Jean-Baptiste that AT&T

1

had created "an alternative process for resolving disputes between the company and employees." Id. at Ex. 1. This alternative process would use "independent, third-party arbitration rather than courts or juries" and, according to AT&T, "is more informal than a lawsuit in court, and may be faster." Id.

The email also informed Jean-Baptiste that her participation in the arbitration program was optional:

> The decision on whether or not to participate is yours to make. To help you make your decision, **it is very important for you to review the Management Arbitration Agreement linked to this email.** It provides important information on the process and the types of disputes that are covered by the Agreement.
>
> Again, the decision is entirely up to you. To give you time to consider your decision, the company has established a deadline of no later than 11:59 p.m. Central Standard Time on Wednesday, May 18, 2016 to opt out – that is, decline to participate in the arbitration process – using the instructions below.
>
> If you do not opt out by the deadline, you are agreeing to the arbitration process as set forth in the Agreement. This means that you and AT&T are giving up the right to a court or jury trial on claims covered by the Agreement.

Id. (emphasis original).

In other words, AT&T would assume Jean-Baptiste wished to give up her rights unless she followed their prescribed "opt out" procedure: (1) open the Arbitration Agreement attached to the email; (2) click a link in the Arbitration Agreement to visit a separate website; and (3) follow the instructions on that separate site to register Jean-Baptiste's opt out. Id. Whether she wished to opt out or not, AT&T instructed Jean-Baptiste to click the "Review Completed" button after reading the Arbitration Agreement. Id. at Exh. 2.

On April 1, 2016 and April 15, 2016, AT&T sent follow-up emails identical to the first email. Id. ¶ 11. On April 18, 2016, Jean-Baptiste accessed the text of the Arbitration Agreement

and clicked the "Review Completed" button. Id. ¶¶ 14-15. On May 19, 2016, the opt out period expired, and the Arbitration Agreement allegedly took effect. Id. ¶ 18.

### B. Procedural Background

On August 18, 2017, Jean-Baptiste commenced the State Court Action, alleging, inter alia, gender and race discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. § 10:5-1, et seq. ("NJLAD"). Id. ¶ 19. On September 14, 2016, AT&T asked Jean-Baptiste to withdraw her State Court Action and proceed to arbitration. Id. ¶ 20. On November 21, 2017, AT&T filed this action, seeking to compel arbitration and to stay the State Court Action. Id. ¶¶ 23, 25, 33; ECF No. 3. Jean-Baptiste cross-moved to dismiss. ECF No. 11.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss on the pleadings, the court accepts as true all of the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Id.

The facts alleged, however, must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id. Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## III. LEGAL ANALYSIS

AT&T's motion to compel arbitration and Jean-Baptiste's motion to dismiss both turn on whether the Arbitration Agreement is enforceable against Jean-Baptiste.[1] Jean-Baptiste does not dispute that she reviewed the Arbitration Agreement, or that it purports to cover her NJLAD claims brought in the State Court Action. Rather, she argues that she never affirmatively agreed to be bound by the Arbitration Agreement and that mere silence cannot be considered consent. AT&T argues that Jean-Baptiste agreed to the Arbitration Agreement by reading the agreement and failing to follow AT&T's prescribed opt out procedure. The Court agrees with Jean-Baptiste.

To determine the enforceability of an arbitration agreement, the Court looks to state contract law. JPMorgan Chase & Co. v. Custer, No. 15-6288, 2016 WL 927339, at *4 (D.N.J. March 10, 2016) (citing First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Leodori v. CIGNA Corp., 175 N.J. 293, 302 (2003)). In New Jersey, a waiver of rights – in the context of an arbitration agreement or otherwise – must be clear and unambiguous. See Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 447-48 (2014). Such a waiver "results only from an explicit,

---

[1] Jean-Baptiste's motion to dismiss presents two additional grounds for dismissal: (1) Robert Woodier, Jean-Baptiste's manager at AT&T and a named defendant in the State Court Action, is a necessary and indispensable party whose joinder would destroy diversity jurisdiction; and (2) the Court should abstain from making a ruling pursuant to the Younger/Colorado River abstention doctrine. Neither warrants dismissal. Woodier is not a necessary or indispensable party because "the Supreme Court has ruled that the FAA requires courts to enforce arbitration agreements 'notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.'" JPMorgan Chase & Co. v. Custer, No. 15-6288, 2016 WL 927339, at *2 (D.N.J. March 10, 2016) (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 461 U.S. 1, 20 (1983)); see also Northport Health Servs. of Ark., LLC v. Rutherford, 605 F.3d 483, 491 (8th Cir. 2010) ("[E]very circuit to consider the issue has concluded that a party joined in a parallel state court contract or tort action who would destroy diversity jurisdiction is not an indispensable party under Rule 19 in a federal action to compel arbitration."). Nor will the Court abstain. "Congress's clear intent, in the Arbitration Act, [was] to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." Moses H. Cone, 460 U.S. at 22. Abstention in such actions "would thwart Congress's intent that, despite the existence of a concurrent related action in state court, parties to a binding agreement under the FAA should move into arbitration rapidly." Custer, 2016 WL 927339, at *3 (citing Moses H. Cone, 460 U.S. at 22).

affirmative agreement that unmistakably reflects the employee's assent." Leodori, 175 N.J. at 303. This affirmation "need not be an actual signature, but must demonstrate a willingness and intent to be bound by the arbitration provision[.]" Schmell v. Morgan Stanley & Co., Inc., No. 17-1308, 2018 WL 1128502, at *2 (D.N.J. March 1, 2018) (citing Ricci v. Sears Holding Corp., No. 14-3136, 2015 WL 333312, at *4 (D.N.J. Jan. 23, 2015)).

The Supreme Court of New Jersey's analysis in Leodori v. CIGNA Corp. is instructive. 175 N.J. 293 (2003). There, the Supreme Court considered whether an arbitration provision contained in an employee handbook was enforceable, even though the employee had failed to sign the "Employee Handbook Receipt and Agreement" form. Id. at 297-98. The defendants argued that the plaintiff's receipt of the handbook, together with the plaintiff's continued employment and knowledge of the arbitration policy "based on . . . numerous documents" received by the plaintiff, was sufficient to demonstrate the plaintiff's assent to the waiver of rights. Id. at 303, 306. The Supreme Court disagreed, holding that such a waiver was unenforceable "unless we find some other unmistakable indication that the employee affirmatively had agreed to arbitrate his claims." Id. at 307. Thus, Leodori established that "an arbitration provision cannot be enforced against an employee who does not sign or otherwise explicitly indicate his or her agreement to it." Id. at 306.

AT&T argues that Jean-Baptiste's failure to follow AT&T's opt out procedure – her <u>lack of action</u> – signifies she intended to waive her rights and be bound by the Arbitration Agreement. Leodori compels the Court to reject this argument. Jean-Baptiste's silence is not "explicit, affirmative agreement that unmistakably reflects" her assent to the Arbitration Agreement. Leodori, 175 N.J. at 303.[2] Without any explicit indication of assent, the Court cannot ensure that

---

[2] AT&T cites a previous case in this District holding that a mere failure to opt out is sufficient conduct to signify acceptance of an arbitration program. See Jayasundera v. Macy's Logistics &

5

Jean-Baptiste "has agreed clearly and unambiguously" to waive her rights and participate in the arbitration program. See id. at 302. Jean-Baptiste did not take any explicit action whatsoever to affirmatively indicate her assent to the Arbitration Agreement. Id. At no point did Jean-Baptiste click or sign anything that said "I agree." Although she acknowledged having reviewed the Arbitration Agreement, acknowledgement of receipt is not the same as assent to the terms. See Morgan v. Raymours Furniture Co., Inc., 443 N.J. Super 338, 343 (App. Div. 2016) (citing Leodori, 175 N.J. at 307).

AT&T cites cases where continued employment was deemed an affirmative indication of an employee's assent to an arbitration program. In those cases, however, the employees were either notified that their continued employment signified their assent, or they were told that their employment was expressly conditioned on their participation in the company's arbitration program. See Descafano v. BJ's Wholesale Club, Inc., No. 15-7883, 2016 WL 1718677, at *3 (D.N.J. Apr. 28, 2016) (noting that "the forms accompanying the acknowledgment explain that continued employment would signify consent"); Jaworski v. Ernst & Young U.S. LLP, 441 N.J. Super 464, 474 (App. Div. 2015) (involving language stating "[a]n Employee indicates his or her agreement to the Program and is bound by its terms and conditions by beginning or continuing employment with [EY] after July 18, 2017"); Bourgeois v. Nordstrom, Inc., No. 11-2442, 2012 WL 42917, at *1 (D.N.J. Jan. 9, 2012) (involving language stating "I understand that the Program becomes effective on December 1, 2004, for employees who are employed with Nordstrom on or after December 1, 2004"); Taha v. Tires Plus, No. 10-4118, 2011 WL 2293330, at *3 (D.N.J. June 8, 2011) ("Plaintiff unequivocally manifested his intent to accept Plaintiff's offer when he signed

---

Operations, Dep't of Human Res., No. 14-7455, 2015 WL 4623508 (D.N.J. Aug. 3, 2015). The Court notes that this case is persuasive, not binding, precedent.

the Agreement, which clearly provides that the EDR Plan is a condition of his at-will employment.").

Here, AT&T did not condition Jean-Baptiste's employment on her participation in its arbitration program, nor did it say that by continuing her employment she would be signifying her acceptance of the Arbitration Agreement. To the contrary, AT&T specifically told Jean-Baptiste that the decision was "entirely up to [her]" and that there would be "no adverse consequences" if she did not wish to participate in the program. Compl. ¶ 10. Accordingly, Jean-Baptiste's decision to continue her employment with AT&T simply had nothing to do with her assent to the optional program.

If AT&T wished to make the Arbitration Agreement a condition of Jean-Baptiste's continued employment, or if it wished to obtain a signature or a simple click that stated "I agree" or "I accept," it was free to do so. Instead, AT&T chose to rely on an absence of action from its employees to signify acceptance of the Arbitration Agreement. Leodori makes clear that the burden of obtaining affirmative acceptance of waiver-of-rights provisions rests with employers. See Leodori, 175 N.J. at 307 ("[W]ith minimal effort, employers can revise the language to include an indication that the recipient has received and agreed to an arbitration policy."). AT&T failed to obtain this explicit, affirmative acceptance, and the Arbitration Agreement is thus unenforceable against Jean-Baptiste.

IV. **CONCLUSION**

For the reasons stated above, Plaintiff's motion to compel arbitration is **DENIED** and Defendant's motion to dismiss **GRANTED**. An appropriate Order accompanies this Opinion.

7

Date: July 13, 2018  /s/ *Madeline Cox Arleo*
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**